IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

           Respondent,                    No. CR S-98-0128 GEB DAD P

    vs.

MARIANO MURILLO,

           Movant.               FINDINGS AND RECOMMENDATIONS

_____/

        Movant has filed a motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255. Respondent has opposed the motion. Petitioner has filed a traverse, styled as a "Motion in Opposition to Government's Response."

        On August 6, 1999, following a three-day jury trial, movant was found guilty of possession of methamphetamine with intent to distribute (count one) and possession of cocaine with intent to distribute (count two), both in violation of 21 U.S.C. § 841(a)(1). On December 17, 1999, movant was sentenced to 188 months imprisonment on each count, with those sentences to be served concurrently. In addition, a five year term of supervised release was imposed along with the mandatory $100 special assessment on each count. (Doc. No. 151.) Judgment was entered on January 12, 2000. In his § 2255 motion, movant claims that he received ineffective assistance from both his trial and appellate counsel.

1

Having considered all the papers filed by the parties and the record in this action, for the reasons set forth below, the court will recommend that the motion be denied.

**PROCEDURAL HISTORY**

On March 20, 1998, a federal grand jury returned an indictment charging movant with possession of approximately 4.3 kilograms of methamphetamine and possession with the intent to distribute approximately 2.5 kilograms of cocaine.  (Doc. No. 1.)   On July 20, 1998, counsel on behalf of movant filed a motion to suppress all evidence seized from the rental car movant was driving at the time of his arrest on February 22, 1998.  Defense counsel also moved to suppress any statements obtained from movant by law enforcement officers on that date.  An evidentiary hearing on the motion was held before U.S. District Judge Garland E. Burrell, Jr. on September 4, 1998.[1]  At the conclusion of the hearing, the court denied the motion.

A jury trial commenced on December 15, 1998.  The jury began deliberation on the fourth day of trial.  On December 21, 1998, the jury informed the trial court that they were unable to reach a verdict and a mistrial was declared.

On February 17, 1999, movant's re-trial was commenced.[2]  After deliberating for approximately a day and a half, the jury notified the court that they were hopelessly deadlocked and that further deliberations would be futile.  Accordingly, on February 25, 1999, a mistrial was declared.

On August 3, 1999, movant's third trial on these charges was commenced.[3]  On August 6, 1999, the jury began its deliberations.  Following approximately five hours of

/////

---

[1]  Assistant Federal Defender Shari Greenstein represented movant in pretrial proceedings and at his first trial.

[2]  At his second trial movant was represented by Assistant Federal Defenders Shari Greenstein and John Balazs.

[3]  At his second trial and at sentencing movant was represented by Assistant Federal Defenders John Balazs and Vicki Cody.

1   deliberations, the jury returned guilty verdicts on both counts.  As noted above, movant was

2   sentenced on December 17, 1999, and the judgment was entered on January 12, 2000.

3          Appealing his conviction, movant argued that the trial court had erred in certain

4   evidentiary rulings at trial, in refusing to compel discovery of unrelated case files that were in the

5   government's possession, and in applying the U.S. Sentencing Guidelines by refusing to grant

6   him a two-level reduction in his adjusted offense level for having played a minor role in the

7   offense.  See United States v. Murillo, 255 F.3d 1169, 1172 (9th Cir. 2001).[4]  Among the

8   evidentiary rulings that movant challenged on appeal was the district court's finding, made in

9   connection with the denial of the motion to suppress evidence, that movant's consent to the

10  search of his rental car was voluntary.  See 255 F.3d at 1174-75.  On July 6, 2001, the Ninth

11  Circuit affirmed the judgment, concluding that none of the challenged rulings by the district court

12  were either an abuse of discretion or clearly erroneous.  255 F.3d at 1179.

13         On March 13, 2003, movant timely filed his § 2255 motion to vacate, set aside, or

14  correct his sentence on his won behalf.[5]

15                          **FACTUAL BACKGROUND**

16         The Ninth Circuit's published opinion affirming movant's judgment of conviction

17  on appeal provides the following summary of the evidence in this case.

18              Murillo was driving a rental car northbound on Interstate 5 in
            Colusa County, California, on the morning of February 22, 1998.
19          California Highway Patrol Officer Allen Stallman observed
            Murillo driving in the right lane following a tractor-trailer rig too
20          closely.  Officer Stallman pulled into the fast lane of the divided
            highway and drove parallel to Murillo's car.  Murillo was tightly
21          gripping the steering wheel with both hands and looking straight
            ahead without acknowledging the presence of the marked police

22

23         [4]  On appeal movant was represented by Assistant Federal Defender John Balazs.

24         [5]  For statistical purposes only this § 2255 motion was assigned companion civil case No.
      S-03-0524 GEB DAD P.  On March 28, 2003, the court dismissed movant's motion because,
25    although it referred to a memorandum of points and authorities, no such memorandum was
      included with the motion.  On May 9, 2003, the court vacated the order of dismissal after movant
26    had filed his memorandum of points and authorities in support of the motion on April 4, 2003.

car.  Stallman found this behavior unusual and backed off so that he could read the license plate and run a radio check to determine if the car was stolen.

After being notified a short time later by the CHP dispatcher that there were no outstanding wants or warrants on the vehicle, he pulled ahead of the truck, clearing the fast lane so that Murillo could get around the truck.  Officer Stallman pulled off on the right-hand shoulder and observed Murillo pass him in the slow lane, still tailgating the truck.  He caught up with Murillo and pulled him over with the intention of citing him for following too closely in violation of California Vehicle Code § 21703.

Officer Stallman approached Murillo's car on the right-hand shoulder next to the passenger door.  He observed food wrappers on the floor which he believed indicated that the driver was on a long road trip.  He asked Murillo to produce his driver's license and the registration for the car.  When Murillo handed the officer the paperwork, Officer Stallman noticed that Murillo's hand trembled severely.  The officer testified that he used nonconfrontational language and tried to calm Murillo by telling the motorist the reason for the stop, but the defendant's nervousness did not abate.

In examining the vehicle paperwork prior to issuance of the citation, Officer Stallman noted that the rental agreement had been signed at 8:00 p.m. the night before which meant that Murillo had driven most of the night from Santa Ana in southern California to Colusa County in northern California.  The rental agreement indicated that the car was to be returned to Santa Ana in just two days.  Officer Stallman testified that in his experience and based upon special training he had received in narcotics interdiction, a long distance, quick turnaround trip in a rental car was suspicious.

Officer Stallman explained that he was going to issue a citation.  Murillo anxiously acknowledged the violation.  The officer testified that the defendant's apparent eagerness to accept the traffic citation - and quickly end his encounter with the officer - suggested to him that more serious criminal activity might be afoot.

While Officer Stallman was issuing the citation, he asked Murillo where he was going.  Murillo said he was going to pick up his mother at his aunt's home in Yakima, Washington, but he did not know the address.  He could not even describe the location of the residence.  Officer Stallman found suspicious the defendant's inability to explain adequately his travel plans.

Because Murillo still seemed exceedingly nervous, the officer asked if he could check his pulse.  Defendant consented and the officer determined that his heart was racing at 150 to 160 beats per

4

minute.  Officer Stallman testified that Murillo was one of the most nervous drivers he had ever encountered in ten years with the Highway Patrol.  After this pulse check, Officer Stallman finished writing the citation and gave the ticket to Murillo to sign.

As a result of what he had observed, Officer Stallman testified that he wondered whether the defendant might be hiding something in the car, so he asked a series of questions to determine whether Murillo was carrying alcohol, weapons, or narcotics.  Murillo looked directly at the Officer in denying that his car held alcohol or weapons.  He looked down and away when asked about the presence of narcotics in his car.  Officer Stallman repeated the same series of questions and Murillo twice gave the same suspicious response by looking away from the officer when asked whether there were drugs in the car.

Officer Stallman asked Murillo for his consent to search the rental car.  Using a pre-printed consent to search form written in English and Spanish, Stallman explained the provisions of the form in English since his contact with defendant had confirmed that Murillo was capable of understanding and conversing in English.  However, Officer Stallman directed Murillo's attention to the lower half of the consent form written in Spanish to ensure that Murillo knew his rights and what he was signing.  Murillo then signed the consent form authorizing the search of his car.

Officer Stallman noticed during the search that two screws on the rear door panel appeared to have been recently removed.  The defendant, who had been staring across the freeway during the first portion of the search, turned completely away when Officer Stallman inspected the rear doors of the rental car.  By coincidence, a California Highway Parole Canine Unit from the nearby Williams Area Office arrived to back up Officer Stallman.  Based upon his observations concerning the screws on the rear door panel, Officer Stallman asked the canine officer to have his dog examine the interior and rear portions of the car.  The dog alerted to the presence of narcotics in the right rear door panel both inside and outside the vehicle.  At this point, Officer Stallman asked the defendant, who had been standing unfettered about twenty feet away outside the patrol car, to get into the rear of his police car while other officers removed the right rear door panel of the sedan.  They discovered several packages of suspected narcotics which later analysis showed were 3.8 kilograms of methamphetamine and 2.5 kilograms of cocaine, valued at over one million dollars.  Murillo was then placed in handcuffs and told that he was under arrest.

United States v. Murillo, 255 F.3d at 1172-73.

/////

5

**MOVANT'S CLAIMS**

Movant alleges that he received ineffective assistance from his trial and appellate counsel in three respects.  First, he argues that his trial counsel was ineffective during the evidentiary hearing on his motion to suppress evidence because she failed to argue that movant's consent to the search of his car was involuntary due to his limited education.  (P. & A. at 7.)  In this regard, movant contends that he was 38-years old at the time of his arrest, had only a fifth grade education in Mexico, and was unfamiliar with the criminal process.  (Id.)  Based on these circumstances, movant argues that his consent to the search of his rental vehicle was involuntary and that the subsequent search was conducted in violation of his Fourth Amendment rights.  (Id.)  Movant contends that his trial counsel's failure to challenge the voluntariness of his consent and to obtain the suppression of the evidence seized pursuant to that illegal search, constituted ineffective assistance of counsel.  (Id. at 8.)  In addition, movant argues that his trial counsel's failure to argue that the search of his rental car was illegal under the United States Supreme Court's holding in Knowles v. Iowa, 525 U.S. 113 (1998), constituted ineffective assistance.[6]

Second, movant claims that his trial counsel was ineffective in failing to challenge the bringing of charges against him in federal rather than state court.  (P. & A at 9.)  In this regard, movant argues that although the charges involved a "substantial amount of methamphetamine and cocaine," they should have been pursued in a state court prosecution in light of his lack of prior record and the absence of an ongoing federal investigation into his conduct.  (Id. at 10.)  He also contends that because his vehicle was stopped by a California Highway Patrol officer and he was booked into county jail upon his arrest by the Colusa County narcotics task force officers on state charges, the U.S. District Court lacked jurisdiction over the

---

[6]  In advancing this argument movant merely cites to the decision in Knowles v. Iowa, 525 U.S. 113 (1998), without further explanation.  In that case the United States Supreme Court held that an Iowa statute authorizing a full-blown search of an automobile and its driver pursuant to the mere issuance of a traffic citation (i.e. a "search incident to citation" rule), violated the Fourth Amendment. 525 U.S. at 116-20.

1   trial of his case.  Accordingly, movant concludes, his trial counsel was ineffective in failing to

2   challenge the federal nature of his prosecution.  (Id. at 10-11.)

3         Third, movant argues that on appeal, his counsel was ineffective by failing to

4   challenge the five year term of supervised release imposed as part of his sentence based on the

5   decision in Jones v. United States, 526 U.S. 227 (1999).  (Id. at 12.)[7]  Movant contends that he

6   should have received a three year term of supervised release, rather than five years because the

7   issue of the quantity of drugs he possessed was not submitted to the petit jury and he was

8   therefore found guilty under 21 U.S.C. § 841(b)(1)(A) rather than 21 U.S.C. § 841(b)(1)(C).  (Id.)

9   Although trial counsel objected to the error at sentencing, movant contends that counsel failed to

10   include this issue in the appeal which resulted in a longer term of supervised released being

11   imposed as part of his sentence.  (Id. at 14.)

12                             **LEGAL STANDARD**

13         A federal prisoner making a collateral attack against the validity of his or her

14   conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence

15   pursuant to 28 U.S.C. § 2255 filed in the court which imposed sentence.  Tripati v. Henman, 843

16   F.2d 1160, 1162 (9th Cir. 1988).  Under § 2255, the federal sentencing court may grant relief if it

17   concludes that a prisoner in custody was sentenced in violation of the Constitution of laws of the

18   United States.  United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999).

19         In reviewing a motion brought pursuant to § 2255, a federal court shall hold an

20   evidentiary hearing "unless the motion and the files and records of the case conclusively show

21   that the prisoner is entitled to no relief."  28 U.S. C. § 2255.  See also United States v. Zuno-

22   Arce, 339 F.3d 886, 889 (9th Cir. 2003).  However, to be entitled to an evidentiary hearing the

23   movant must provide specific factual allegations which, if true, state a claim on which relief

24   /////

25

26       [7]  See fn. 9, infra.

1   under § 2255 could be granted.  United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003);

2   United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984).

3   **ANALYSIS**

4            As noted above, all of movant's claims involve allegations that he received

5   ineffective assistance of counsel.  Below, the court will address the legal standards governing

6   such claims before turning to each of movant's specific claims.

7   I.       Legal Standards Governing Ineffective Assistance of Counsel Claims

8            The Sixth Amendment guarantees criminal defendants the right to effective

9   assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984) (citing McMann v.

10  Richardson, 397 U.S. 759, 771 n.14 (1970)); United States v. Span, 75 F.3d 1383, 1386 (9th Cir.

11  1996).  Thus, under the Sixth Amendment a defendant is entitled to "a reasonably competent

12  attorney, whose advice is within the range of competence demanded of attorneys in criminal

13  cases."  United States v. Cronic, 466 U.S. 648, 655 (1984) (internal quotations omitted).  The

14  purpose of the effective assistance guarantee is "to ensure that criminal defendants receive a fair

15  trial."  Strickland, 466 U.S. at 689.  Toward that end, the Sixth Amendment requires that an

16  accused be assisted by an attorney "'who plays the role necessary to ensure that the trial is fair.'"

17  Frazer v. United States, 18 F.3d 778, 782 (9th Cir. 1994) (quoting Strickland, 466 U.S. at 685).

18           To support a claim of ineffective assistance of counsel, a movant seeking relief

19  under § 2255 must first show that, considering all the circumstances, counsel's performance fell

20  below an objective standard of reasonableness.  Strickland, 466 U.S. at 688.  Movant must

21  therefore identify the acts or omissions that are alleged not to have been the result of reasonable

22  professional judgment.  Id. at 690.  The court must then determine whether, in light of all the

23  circumstances, the identified acts or omissions were outside the wide range of professional

24  competent assistance.  Id.; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  "There is a strong

25  presumption that counsel's performance falls within the 'wide range of professional assistance.'"

26  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There

1    is in addition a strong presumption that counsel "exercised acceptable professional judgment in

2    all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

3    Strickland, 466 U.S. at 689).

4         Second, movant must affirmatively prove prejudice. Strickland, 466 U.S. at 693.

5    Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional

6    errors, the result of the proceeding would have been different." Id. at 694. A reasonable

7    probability is "a probability sufficient to undermine confidence in the outcome." Id. See also

8    Williams v. Taylor, 529 U.S. 362, 391 (2000); Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir.

9    2000). A reviewing court "'need not determine whether counsel's performance was deficient

10   before examining the prejudice suffered by the defendant as a result of the alleged deficiencies

11   . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

12   prejudice . . . that course should be followed.'" Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir.

13   2002) (quoting Strickland, 466 U.S. at 697).

14        The Strickland standards apply to appellate counsel as well as trial counsel. Smith

15   v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

16   However, an indigent defendant "does not have a constitutional right to compel appointed

17   counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

18   professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751

19   (1983). Counsel "must be allowed to decide what issues are to be pressed." Id. Otherwise, the

20   ability of counsel to present the client's case in accord with counsel's professional evaluation

21   would be "seriously undermined." Id. See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

22   Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

23   not even particularly good appellate advocacy."). There is, of course, no obligation to raise

24   meritless arguments on a client's behalf. See Strickland, 466 U.S. at 687-88 (requiring a

25   showing of deficient performance as well as prejudice). Thus, counsel is not deficient for failing

26   to raise a weak issue. See Miller, 882 F.2d at 1434. In order to demonstrate prejudice in this

1    context, petitioner must show that, but for appellate counsel's errors, he probably would have

2    prevailed on appeal.  Id. at 1434 n.9.

3    II.    Claim One:  Trial Counsel's Alleged Failure to Challenge the Voluntary Nature of

4          Movant's Consent to the Search of His Rental Car.

5          A.  Respondent's Procedural Bar Argument

6              At the outset, respondent contends that although movant's first claim for relief

7    under § 2255 is couched as one of ineffective assistance of counsel claim, movant is actually

8    attempting to re-litigate his Fourth Amendment challenge that has been resolved against him on

9    appeal.  (Resp. at 9.)  Respondent argues that when an appellate court has already decided a

10   claim, a movant cannot relitigate that claim on collateral review absent exceptional

11   circumstances.  (Id.) (citing Withrow v. Williams, 507 U.S. 680, 720-21 (1993)).  Respondent

12   argues that movant has had ample opportunity to litigate his claim that his consent to the search

13   of his rental car was involuntary.  (Id. at 10.)  Respondent notes that following an evidentiary

14   hearing, the district court concluded that movant's consent to the search was knowingly and

15   voluntarily made and that the district court's determination was upheld by the Ninth Circuit

16   Court of Appeals.  (Id. at 11.)  Respondent contends that under the "guise of a Sixth Amendment

17   claim," movant is now improperly attempting to reassert the same arguments that have been

18   rejected by the trial court and on appeal.  (Id. at 11-12.)

19             In reply, movant argues that the United States Supreme Court has recognized that

20   ineffective assistance of counsel claims are "best presented for the first time in collateral

21   proceedings when the defendant is represented by new counsel, rather than on direct appeal,

22   when the defendant is often represented by trial counsel."  (Reply at 3.)

23             The court is not persuaded by respondent's argument that movant's first claim is

24   procedurally barred.  Although movant's arguments in support of this claim and the arguments he

25   presented to the trial court in support of his motion to suppress and to the Ninth Circuit on appeal

26   may be overlapping to some degree, the legal standards governing the ineffective assistance of

counsel claim now pending before this court are quite different than those governing the

disposition of the motion to suppress.  Furthermore, as a general rule, ineffective assistance of

counsel claims are properly raised for the first time in collateral proceedings.  See Massaro v.

United States, 538 U.S. 500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel

claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could

have raised the claim on direct appeal."); United States v. Alferahin, 433 F.3d 1148, 1161 n.6

(9th Cir. 2006) ("We acknowledge that, as a general rule, we do not review challenges to the

effectiveness of defense counsel on direct appeal.  And we reiterate here the policy concern that

informs this rule - namely, that more complete development of the record in the context of a

habeas petition allows for a more effective inquiry into the decisions of defense counsel.")

(internal quotation marks and citations omitted).  Movant did not raise issues relating to the

alleged ineffective assistance of trial counsel in appealing his judgment of conviction.  Therefore,

the court will consider movant's ineffective assistance of trial counsel claims on the merits.

B.  Parties' Arguments on the Merits

Respondent argues that movant has not demonstrated that he was prejudiced by

his trial counsel's performance with respect to the motion to suppress evidence.  (Resp. at 17.)

Respondent notes that the district court denied the motion and found that movant voluntarily

consented to the search of his rental car based upon the "totality of circumstances" including the

fact that movant had signed a form consenting to the search.  (Id.)  Respondent emphasizes that

given the overwhelming evidence of the voluntary nature of movant's consent to the search, he

cannot establish prejudice stemming from his counsel's performance in connection with the

motion to suppress.  Respondent also argues that the Supreme Court's decision in Knowles is

irrelevant here because in Knowles the officer had no basis upon which to search the vehicle in

question but did so solely based upon the state statute that authorized a search incident to

citation.  (Id. at 18.)  Respondent also notes that authority exists supporting the proposition that a

/////

11

signed consent form may demonstrates voluntary consent even where the consenting individual has a limited education or is not fluent in English.  (Id. at 20.)

Respondent also contends that movant is unable to show that his trial counsel's performance in connection with the motion to suppress evidence fell below an objective standard of reasonableness.  (Id.)  Respondent points out that defense counsel: (1) argued that the search of movant's rental car violated the Fourth Amendment because movant's consent to the search was not voluntary; (2) sought suppression of all evidence obtained as a result from the search of the vehicle; and (3) was effective enough to hang two juries resulting in two mistrials being declared and cause a third jury to deliberate for more than five hours before returning guilty verdicts.  (Id. at 20-21.)  Respondent also observes that on appeal, including unsuccessful petitions for en banc review and for a writ of certiorari, movant's counsel argued that the district court had erred in denying the motion to suppress because the search of the rental car violated movant's Fourth Amendment rights.  (Id.)  Finally, respondent argues that defense counsel's failure to rely on movant's limited education in challenging the voluntary nature of his consent was of no import since such an argument would have been unsuccessful and defense counsel properly made a tactical decision in choosing not to present such an argument.  (Id. at 21.)

In reply, movant argues that at the hearing on his motion to suppress, his attorney failed to present evidence that petitioner "was virtually illiterate and only had a fifth grade level education obtained in Mexico.  And only spoke very little English . . . ."  (Reply at 4.)  Movant argues that if the district court had been made aware of his limited education, the court's ruling on the voluntary nature of his consent to search would have been different.  (Id. at 5.)

C.  Discussion

In order to prevail on this aspect of his ineffective of counsel claim, movant must establish that he was prejudiced by his trial counsel's alleged failure to argue that his consent was involuntary based upon his limited education and that counsel's actions constituted ineffective assistance.

The court finds that this aspect of movant's claim lacks any factual basis. Contrary to movant's assertion, defense counsel attempted to demonstrate to the trial court that movant's English language skills were very limited, that he was unsophisticated, and that he had limited education.  In the points and authorities in support of the motion to suppress evidence, defense counsel argued that movant had limited English-language skills, that English was not his first language, and that he had only a limited understanding of English.  (Mot. to Suppress Evidence (Doc. No. 18) P. & A., at 10-11.)  Defense counsel also argued that movant did not have the "benefit of formal schooling in English and knows only the bare minimum necessary to survive in this country."  (Id., P. & A. at 11.)  As for movant's knowledge of the criminal process, counsel argued that movant simply did not understand that he could refuse consent to the search of the vehicle.  (Id., P. & A. at 12.)  In reply to the government's opposition to the motion to suppress evidence, defense counsel also argued that movant was merely a construction worker, had never mastered the English language and that friends and relatives "frequently have to interpret for him in simple situations."  (Reply to Opp'n to Mot. to Suppress (Doc. No. 25) at 2.)

At the evidentiary hearing held in connection with the motion to suppress, defense counsel called movant's wife, brother-in-law, and brother to testify that movant spoke very little English and that his English language comprehension was very limited.  In addition, movant himself testified through a translator at the hearing that he had only a fifth grade education obtained in Mexico.  In this regard, movant testified as follows:

> Ms. Greenstein [defense counsel]:  Q. In your everyday life, Mr. Murillo, how do you converse, in what language?
>
> A.  Spanish
>
> Q.  Can you understand some English words?
>
> A.  Very few.
>
> Q.  If someone is attempting to speak to you in English, what do you do?

1    A.  Well, I look for somebody to help me.

2    Q.  And if nobody is around?

3    A.  Well, if there was nobody, then what I understood, I
     understood, and what I didn't, I didn't.
4
     Q.  Okay.  And what level of school, if any, did you go to in
5    Mexico?

6    A.  To the fifth grade.  I went to the fifth grade.

7    Q.  And other than your construction job that you currently have,
     what other types of jobs have you had?
8
     A.  I have worked at a place, you know, where there are people
9    selling, at a swap meet.

10   Q.  In your jobs and in your everyday life, do you interact with
     people who speak Spanish only?
11
     A.  Yes.
12

13   (Reporter's Transcript (RT) of Evidentiary Hearing held Sept. 4, 1998 (Doc. No. 29) at 92.)[8]

14          The record establishes that trial counsel elicited testimony before the district court

15   establishing that movant was a construction worker with only a fifth grade education obtained in

16   Mexico.  The fact that defense counsel elected to emphasize movant's limited English language

17   skills more than his limited education, in arguing that his consent to the search was involuntary

18   does not constitute ineffective assistance of counsel.  Nor does trial counsel's decision as to

19   emphasize in her argument certain testimony over other testimony act so as to undermine

20   confidence in the outcome of the suppression hearing.  As noted, the district court was made

21   aware of movant's limited education.  Nonetheless, in denying the motion to suppress the court

22

23          [8]  The court notes that in finding movant's consent to search to have been voluntarily
     given that the district court found that there was no indication during the CHP officer's
24   communication with movant following the traffic stop that movant had "any difficulty
     whatsoever in understanding the English language," that the consent to search form was read to
25   movant in both English and in Spanish and that the defendant's testimony established that he
     knew he could refuse to consent to the search of the rental car.  (Reporter's Transcript (RT) of
26   Evidentiary Hearing held Sept. 4, 1998 (Doc. No. 29) at 114, 117-18.)

14

1  concluded that movant's own testimony revealed that he knew that he could have refused consent

2  to the search of the rental vehicle.  (RT at 118.)

3  Of course, there is a strong presumption that counsel's performance was within

4  the wide range of professional assistance.  See Kimmelman, 477 U.S. at 381; Strickland, 466

5  U.S. at 689.  Moreover, the Strickland standard "places the burden on the defendant, not the

6  State, to show a 'reasonable probability' that the result would have been different."  Wong v.

7  Belmontes, ___ U.S. ___, 130 S. Ct. 383, 390-391 (2009) (quoting Strickland, 466 U.S. at 694).

8  Here, movant has merely speculated that he would have obtained a favorable ruling on his

9  motion to suppress if his counsel had elected to place added emphasis on his limited education.

10  Such speculation is insufficient and movant has failed to meet his burden of establishing

11  prejudice with respect to this aspect ineffective assistance of counsel claim.

12  The court also finds that movant's reliance on Knowles v. Iowa, 525 U.S. 113

13  (1998) is misplaced.  As noted above, in Knowles the United States Supreme Court held that an

14  Iowa statute authorizing a full-blown search of an automobile and its driver pursuant to the mere

15  issuance of a traffic citation (i.e. a "search incident to citation" rule), violated the Fourth

16  Amendment.  525 U.S. at 116-20.  Law enforcement officers in that case were not relying on a

17  claim that  Knowles had consented to a search of his vehicle.  In the present case the California

18  Highway Patrol officer who stopped movant searched the rental car pursuant to movant's

19  consent.  The searching officers were not relying on any claimed "search incident to citation"

20  exception.  This was a consent search.  Accordingly, the holding in Knowles is inapplicable here.

21  For the reasons set forth above, movant is not entitled to relief under § 2255 with

22  respect to his first claim of ineffective assistance of trial counsel.

23  III.   Claim Two:  Trial Counsel's Alleged Failure to Challenge Federal Court Jurisdiction

24  Over Movant's Prosecution.

25  Movant argues that his trial counsel should have challenged the federal court's

26  jurisdiction over his prosecution in light of the fact that movant was arrested in Colusa County

1   by the California Highway Patrol, was initially booked into the Colusa County Jail, had no prior

2   record and was not the subject of any ongoing federal investigation.

3          Respondent argues that this ineffective assistance of counsel claim is frivolous.

4   Respondent notes that when criminal conduct violates both state and federal law, prosecutors can

5   rely on various criteria in deciding whether to pursue prosecution in state or federal court.  (Id. at

6   21-22.)  Among those criteria in narcotics offenses is the quantity of drugs involved in the

7   offense conduct.  Respondent argues that movant was properly charged with violating 21 U.S.C.

8   § 841(a)(1), and that the U.S. District Court for the Eastern District of California had jurisdiction

9   over the prosecution under 18 U.S.C. § 3231.  (Id. at 22.)  Respondent argues that plaintiff

10  therefore cannot contend that his counsel's performance in failing to challenge the court's

11  jurisdiction was deficient in any way.  Finally, respondent notes that because any challenge to the

12  federal court's jurisdiction would have been rejected, movant cannot establish prejudice

13  stemming from his counsel's failure to pursue this frivolous argument.

14         This aspect of movant's claim of ineffective assistance of trial counsel has no

15  merit.  "[I]n the ordinary case, so long as the prosecutor has probable cause to believe that the

16  accused committed an offense defined by statute, the decision whether or not to prosecute, and

17  what charge to file . . . generally rests entirely in his discretion."  United States v. Armstrong, 517

18  U.S. 456, 464 (1996) (internal quotations omitted).  See also Wayte v. United States, 470 U.S.

19  598, 607 (1985); Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).  "[T]here is nothing

20  inappropriate or vindictive about a state law enforcement agency referring potential violations of

21  federal law to federal authorities."  United States v. Culliton, 328 F.3d 1074, 1081 (9th Cir.

22  2003).  As one federal circuit court recently observed in rejecting a defendant's challenge to his

23  federal prosecution based upon his claim that he was similarly situated to a group of defendants

24  charged in a state-court drug conspiracy case who received lighter sentences:

25              Moore's challenge is premised on irrationality, not invidious
            discrimination; because a no-rational-basis challenge to the
26          exercise of prosecutorial discretion is doomed to failure, his class-

of-one argument is foreclosed for this reason as well. As the
district court correctly pointed out at sentencing, under ordinary
circumstances, the federal charging decision is solely for the
executive branch to make without fear of second-guessing by the
judiciary.

United States v. Moore, 543 F.3d 891, 900 (7th Cir. 2008).  See also United States v. Oakes, 11
F.3d 897, 899 (9th Cir. 1993) (federal courts have no jurisdiction to review prosecutor's charging
decisions, absent proof of discrimination based on suspect characteristics, even where the
prosecutor's decision was motivated by a desire to impose a harsher sentence that is inconsistent
with the treatment given other defendants); United States v. Palmer, 3 F.3d 300, 305 n.3 (9th Cir
1993) (upholding a federal prosecution where the defendant's crime partner was prosecuted in
state court and received a sentence of no jail time and the defendant was sentenced by the federal
court to ten years in prison); Derengowski v. U.S. Marshal 377 F.2d 223, 224 (8th Cir. 1967)
("The exercise of jurisdiction over a prisoner who has violated the law of more than one
sovereignty and the priority of prosecution of the prisoner is solely a question of comity between
the sovereignties which is not subject to attack by the prisoner.").

For these reasons, movant is not entitled to relief under § 2255 on this aspect of
his ineffective assistance of trial counsel claim.

IV.   Ineffective Assistance of Appellate Counsel In Failing to Challenge on Appeal the
      Supervised Release Term Imposed.

Movant argues that his appellate counsel was ineffective by failing to challenge on
appeal the five-year term of supervised release imposed by the district court as part of his
sentence.  Movant relies on the decision in Jones v. United States, 526 U.S. 227 (1999) and
contends that the issue of the quantity of drugs in his possession should have been submitted to
/////
/////
/////
/////

17

1  the jury for its determination.[9]  Because it was not, movant argues that he should have been found

2  guilty only of violating 21 U.S.C. § 841(b)(1)(C) which, he contends, carries with it a maximum

3  three-year term of supervised release.  He argues that his trial counsel objected to the supervised

4  release term imposed at the time of sentencing, thereby preserving the issue for appeal.

5  However, movant asserts, his appellate counsel failed to raise this potentially meritorious issue

6  on appeal.  Movant argues that a reasonable appellate attorney would have challenged the

7  validity of the five year term of supervised release on appeal.

8      A.  Respondent's Procedural Bar Argument

9          Respondent first asserts that movant's contention that his appellate counsel was

10  ineffective for failing to raise this issue on appeal is not a cognizable claim under § 2255.  (Resp.

11  at 13.)  Respondent argues that with this claim movant is actually attempting to argue that the

12  sentencing court misapplied the U.S. Sentencing Guidelines in imposing a five-year, rather than

13  three-year, term of supervised release.  (Id.)  Respondent contends that is not a claim of

14  constitutional error.  Id.  Furthermore, respondent argues that the prosecution's failure to submit

15  the issue of drug quantity to the jury did not affect movant's constitutional rights and, at most, is

16  a misapplication of the U.S. Sentencing Guidelines that did not result in a longer supervised

17  release term being imposed.  (Id.)  In this regard, respondent contends that 21 U.S.C. §

18  841(b)(1)(C) provides for a term of supervised release of "at least" three years with no maximum

19  term and that the five-year term of supervised release imposed in movant's case was statutorily

20  authorized.  (Id.)  Respondent also argues that even if the statute could be read as limiting the

21  term of supervised release to a maximum of three-years, such an error cannot provide a basis for

22  collateral attack unless there is a fundamental defect which results in a miscarriage of justice.

23

24          [9]  Movant has provided the court with an incorrect citation to the decision in Jones but
    based upon the substance of his arguments it is clear that he is contending that his appellate
25  counsel should have raised an issue based upon error under Apprendi v. New Jersey, 506 U.S.
    466 (2000), which the United States Supreme Court decided the year following its decision in
26  Jones v. United States, 526 U.S. 227 (1999).

1  (Id. at 13-14.)  In conclusion, respondent complains that movant is attempting to raise a non-

2  constitutional claim of sentencing error that should have been raised on direct appeal and cannot

3  be litigated by way of § 2255 motion.  (Id. at 14.)

4         The court does not find respondent's procedural bar argument to be persuasive.

5  Here, movant has argued that his appellate counsel was ineffective for having failed to raise an

6  issue under Apprendi v. New Jersey, 506 U.S. 466 (2000), on direct appeal.  Had appellate

7  counsel raised an Apprendi issue on appeal, it would have been reviewed for plain error.  The

8  court notes that it obviously would not have been possible for movant to raise a claim of

9  ineffective assistance of his appellate counsel on appeal, where he was represented by that same

10  counsel.  Moreover, even claims of ineffective assistance of trial counsel are not addressed on

11  direct appeal but, rather, are deferred until the filing of a § 2255 motion.  See United States v.

12  Ross, 206 F.3d 896, 900 (9th Cir. 2000); United States v. Hoslett, 998 F.2d 648, 660 (9th Cir.

13  1993).  Accordingly, movant's claim that he received ineffective assistance from his appellate

14  counsel should be resolved on the merits.

15      B.  The Parties Arguments on the Merits

16         Addressing the merits of this claim, respondent contends that movant cannot show

17  that his appellate counsel erred in failing to challenge on appeal the supervised release term

18  imposed.  In this regard, respondent argues that movant has misinterpreted the maximum term of

19  supervised release that was authorized under 21 U.S.C. § 841(b)(1)(C) at the time of his

20  sentencing.  (Resp. at 23.)  Respondent notes that since 1995, the statute has authorized a three-

21  year minimum term of supervised release with no maximum term.  (Id. at 24.)  Thus, according

22  to respondent, there would have been no merit to an argument presented on appeal that movant

23  was improperly sentenced under 21 U.S.C. § 841(b)(1)(A) based upon the fact that the issue of

24  drug quantity was not submitted to the jury, since the five year term of supervised release

25  imposed was within the statutorily authorized term in any event.  (Id. at 24) (citing United States

26  v. Barragan, 263 F.3d 919, 921 (9th Cir. 2001)).  Respondent also notes that the Ninth Circuit

has authorized district courts to determine the drug quantity involved in an offense as long as the sentence imposed does not exceed the statutory maximum.  (Id. at 24-25.)   Finally, respondent argues that movant cannot establish prejudice stemming from appellate counsel's alleged omission since there is no reasonable probability that the term of supervised release would have been altered had appellate counsel raised this meritless issue.  (Id. at 25.)

As noted above, movant merely argues that the district court erred in imposing a five-year term of supervised release because the applicable statute mandates a three-year term of supervised release.   Movant suggests that imposition of a five-year term of supervised release was an "upward departure" from the sentencing guidelines range and that the district court was required to provide advance notice to the parties of its intention to depart upward and was also required to find aggravating circumstances supporting the departure.  Movant asserts that a reasonable appellate attorney would have challenged the five year term of supervised release on direct appeal.

C.  Discussion

As noted, movant claims that his appellate counsel was ineffective for failing to challenge the five-year term of supervised release imposed upon him.  Movant suggests that because the government failed to submit the issue of the quantity of drugs he possessed to the jury, under the holdings in Apprendi and Jones, he was unlawfully sentenced under 21 U.S.C. § 841(b)(1)(A) (which provides for a five year term of supervised release), when he should have been sentenced under 21 U.S.C. § 841(b)(1)(C) (which prescribes only a three year term of supervised release).

The issue that movant claims should have been raised on appeal by his counsel is foreclosed by binding Ninth Circuit precedent.  In rejecting a similar argument, the Ninth Circuit has stated:

> Pulu also argues that his five-year supervised release term violates Apprendi because it is above the three-year maximum for "Class C" felonies identified in 18 U.S.C. § 3583(b)(2).  There was no

Apprendi error in Pulu's supervised release term, however, because
the specific supervised release provisions of 21 U.S.C. § 841 trump
the more general provisions contained in 18 U.S.C. § 3583(b)(2).
United States v. Barragan, 263 F.3d 919, 925-26 (9th Cir.2001).
Indeed, 21 U.S.C. § 841(b)(1)(C) requires "at least" three years of
supervised release. Thus, there was no error, plain or otherwise.

United States v. Sua,  307 F.3d 1150, 1154 (9th Cir. 2002).  See also Barragan, 263 F.3d at 925-

26 (rejecting an Apprendi challenge to the imposition of a five year term of supervised release

under 21 U.S.C. § 841(b)(1)(C) and finding the five-year term to be within that permitted by the

statute).

Thus, if this issue had been raised by movant's counsel on appeal it would have

been rejected as meritless.  Of course, counsel is under no obligation to raise meritless issues on

appeal.[10]  Strickland, 466 U.S. at 687-88; Miller, 882 F.2d at 1434.  Therefore, movant can

establish neither deficient performance by his appellate counsel nor prejudice stemming from the

alleged error.  Accordingly, he is also not entitled to relief with respect to this aspect of his

ineffective assistance of counsel claim.

CONCLUSION

For the reasons set forth above,  IT IS HEREBY RECOMMENDED that:

1.  Movant's March 13, 2003 motion to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255 be denied; and

2.  The Clerk of the Court be directed to close the companion civil case No. S-03-

0524 GEB DAD P.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

---

[10]  Ironically, the counsel who according to movant preserved the issue for appeal is the
same counsel who wisely chose not to raise this meritless issue on appeal.

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2  shall be served and filed within seven days after service of the objections.  The parties are

3  advised that failure to file objections within the specified time waives the right to appeal the

4  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5  DATED: February 23, 2010.

7  DALE A. DROZD

8  UNITED STATES MAGISTRATE JUDGE

9  DAD:4
   muri0218.2255